5 F.3d 538
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Steven P. PECK, Plaintiff-Appellant,
v.
KING COUNTY, Defendant-Appellee.
 No. 91-36324.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 5, 1993.*
Decided Aug. 31, 1993.
 
 1
 Appeal from the United States District Court for the Western District of Washington; No. CV-91-123-R, Barbara J. Rothstein, District Judge, Presiding.
 
 
 2
 W.D.Wash.
 
 
 3
 AFFIRMED.
 
 
 4
 MEMORANDUM***
 
 
 5
 Before: BEEZER and HALL, Circuit Judges, and ARMSTRONG,**
 
 
 6
 The plaintiff, Steven P. Peck, sued his former employer, King County, for violating his Fourteenth Amendment due process rights, by firing him without a hearing from his position as a corrections officer. Mr. Peck appeals the district court's grant of summary judgment to King County. We have jurisdiction under 18 U.S.C. Sec. 1291. We AFFIRM.
 
 
 7
 The only issue raised by this appeal is whether the district court erred in finding no genuine issue of material fact regarding Mr. Peck's probationary status at the time of his termination. Mr. Peck contends that his probationary period was 2080 hours and that he had completed that time before his termination.
 
 
 8
 The parties agree that when Mr. Peck was initially hired, his probationary period was 2080 hours. The disagreement comes from interpreting the effect of a new Collective Bargaining Agreement ("CBA"). The CBA expressly replaced any past agreements between the County and the union members. CBA Article XVIII. Because the CBA abolished Mr. Peck's position as an On-Call Corrections Officer, the County converted Mr. Peck to a Full-Time Corrections Officer. This court must consider what the probationary period was for a Full-Time Corrections Officer; and how much, if any, credit should be allotted to Mr. Peck toward completion of the probationary period from his work as an On-Call Corrections Officer.
 
 
 9
 It is undisputed that the probationary period for a Full-Time Corrections Officer was one calendar year. The CBA provides that new employees must serve a probationary period "as defined in the Career Service Guidelines." CBA Article XII. Section 30.44 of the Career Service Guidelines provides: "The probation period shall be six months except as may otherwise be approved by the Personnel Manager, but in no case shall same exceed twelve months." In the case of Full-Time Corrections Officer, the Personnel Manager had approved a twelve-month probationary period. Eakers Affidavit, Exhibit 7; Yerxa Affidavit, Exhibit 1. This conclusion is bolstered by the letter the County sent to Mr. Peck upon his switch to full-time status. It stated:
 
 
 10
 Congratulations on your conversion from an On-Call Corrections Officer to a full-time Officer effective August 1, 1988.
 
 
 11
 In accordance with the collective bargaining agreement between Public Safety Local # 519 and the Department of Adult Detention, the classification of On-Call Corrections Officer has been eliminated. As a result you will be governed by the same conditions of employment as regular officers which includes a one year probation period.
 
 
 12
 The next question is how much credit Mr. Peck should receive toward the completion of his one-calendar-year probation period for his time working as an On-Call Corrections Officer. The CBA provides: "Upon transfer to a full-time position, former On-Call Officers will be assigned the starting rate for Corrections Officers and will receive credit for hours worked; such credit to be applied toward completion of probationary period, and/or subsequent step increases."
 
 
 13
 Mr. Peck contends that this provision requires the County to give him credit for ALL hours worked, including overtime hours. The County, however, implemented this provision by deeming the start of the one-year probationary period Mr. Peck's first work day as an On-Call Corrections Officer, August 1, 1988. The County's method did not give Mr. Peck credit for overtime hours. The County relies on Section 55.30(e) of the Career Service Guidelines which provides: "Time worked as overtime shall not be used to earn employee benefits or to serve out a probationary period."
 
 
 14
 Even if Mr. Peck is correct that he must be given credit for ALL hours worked as an On-Call Corrections Officer, he still did not complete his probationary period. The uncontroverted affidavit of Fe Ruedas, the County payroll officer, shows that Mr. Peck worked 286 hours in August, 240 hours in September and 294.5 hours in October as an On-Call Corrections Officer. In total, Mr. Peck had worked 820.5 of the 2080 probationary hours needed. Thus, at the time he was converted to full-time he still needed 1259.5 hours. Upon becoming a Full-Time Officer, pursuant to Section 55.30(e) of the Career Service Guidelines, Mr. Peck could no longer count overtime hours, because no Full-Time Officer accrues hours toward satisfaction of the probationary period. Instead, Full-Time Officers accrue calendar days of continuous service. At forty hours per week, Mr. Peck was required to work at least 31 more weeks to complete the 1259.5 hours remaining in his probationary period. In other words, even under the assumption that all of his overtime hours worked prior to November, 1988 counted toward completion of probation, his probationary period would end approximately the week of June 2, 1989. Consequently, Mr. Peck was still a probationary employee when he was terminated on April 21, 1989.[1]
 
 
 15
 Mr. Peck also argues that his overtime hours worked after his conversion to a Full-Time Corrections Officer should count. Mr. Peck's affidavit states that he was told by various supervisors, including Mr. Schwalb and Mr. Coleman, that all of his hours would count. He contends that these representations were made as late as December, 1988. Mr. Peck's bare assertion does not create a genuine issue of material fact. He has offered no evidence upon which a jury could find that Department policy counted overtime hours toward satisfaction of the probationary period. Furthermore, he cites no authority suggesting that the representations of these individuals could alter the clear requirements of the CBA, which by incorporating the Career Service Guidelines precludes counting overtime hours. Finally, the CBA, which became effective January 1, 1989, after all the alleged representations were made, specifies that it replaces any past agreement. CBA Article XVIII.
 
 
 16
 We find that the CBA and County guidelines at most entitle Mr. Peck to credit toward his probationary period for overtime hours worked in August through October. Based upon the undisputed facts, the district court did not err in concluding that Mr. Peck was a probationary employee at the time of his termination and therefore was not entitled to a hearing before termination.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Saundra Brown Armstrong, United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This analysis and conclusion mirrors the analysis performed and conclusion reached by Mr. Peck's union representative before withdrawing Mr. Peck's grievance. Affidavit of Quentin Yerxa, Exh. 1, Deposition of Jared C. Karstetter, Jr. at 20 ("I tried to look at different ways we could keep the grievance alive by counting some of his overtime hours prior to the actual implementation of the contract, and was not able to get him enough hours to get him off of probation.")